## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| STEWART ABRAMSON, on behalf of himself and others similarly situated, | : : : | Case No. 1:19-cv-3711 |
| Plaintiff, | : : : | |
| v. | : : : | JURY DEMANDED |
| CHICAGO INSURANCE AGENCY, INC. d/b/a CONNECTED LEADS, THE PROSSEN AGENCY, LLC, and THE ALLSTATE CORPORATION, | : : : : : | |
| Defendants. | : | |

_____/

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.      Plaintiff Stewart Abramson ("Mr. Abramson") ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.      The Allstate Corporation ("Allstate") offers its services through a series of captive insurance agents, such as the Defendant The Prossen Agency, LLC ("Prossen Agency"). Prossen Agency hired Chicago Insurance Agency, Inc. d/b/a Connected Leads ("Connected Leads"), who made a telemarketing call to a cellular telephone number of Mr. Abramson for the purposes of advertising Allstate goods and services using an automated dialing system, which is prohibited by the TCPA.

3.     The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes.  Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

4.     A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

5.     Plaintiff Stewart Abramson is a resident of Pennsylvania.

6.     Defendant The Allstate Corporation is a corporate entity registered in Illinois with a registered agent of CT Corporation System at 208 S. Lasalle St., Suite 814, Chicago, Illinois 60604.  It regularly conducts business in this district, as it attempted to do with the Plaintiff.

7.     Defendant The Prossen Agency, LLC is a corporate entity registered to do business in Pennsylvania with a registered address of 300 Wilmington Road, New Castle, Pennsylvania 16105.

8.     Defendant Chicago Insurance Agency, Inc. is a corporate entity registered in Illinois with a registered agent of Greg Sheppard, 1410 West Belmont Avenue, Chicago, Illinois 60657.

### Jurisdiction & Venue

9.     The Court has federal question subject matter jurisdiction over these TCPA claims.  *Mims*, 132 S. Ct. 740.

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## The Telephone Consumer Protection Act

11.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

12.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

13.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."  *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

### Factual Allegations

16.     Allstate provides various insurance services to its customers.

17.     To generate business through sales, Allstate relies on exclusive agents and understands that those agents engage in telemarketing directly and through third parties.

18.     One of Allstate's strategies for telemarketing involves the use of an automatic telephone dialing system ("ATDS") to solicit business by third parties.

19.     Allstate engages in use of this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

20.     Through this method, Allstate shifts the burden of wasted time to the consumers it calls with unsolicited messages.

Calls to Mr. Abramson

21.     Plaintiff is, and was at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

22.     Mr. Abramson's telephone number, (412) 362-XXXX, is assigned to a cellular telephone service.

23.     Mr. Abramson received a telemarketing call on December 13, 2018 on his cellular telephone number (412) 362-XXXX.

24.     After the call was answered, there was a lengthy pause and a click before anyone came on the line, which indicated to the Plaintiff that the call was made using an ATDS.

25.     The Caller ID number associated with this call was 724-330-7214, which was a non-working number.

26.     This is further indication that this telemarketing call was made by an ATDS.

27.     When the Plaintiff finally connected with a live individual, he was informed that he was speaking to "Barry," who was "calling from Allstate Insurance" and quoting him on home and auto insurance.

28.     Plaintiff asked the caller to repeat and clarify that statement.

29.     The caller repeated that his name was Barry and that he was calling from Allstate Insurance.

30.     Mr. Abramson was then transferred to the Prossen Agency and spoke to a "Liz Gatto," who informed Mr. Abramson that she was with Allstate.

31.     Ms. Gatto then attempted to sell the Plaintiff Allstate services.

32.     Mr. Abramson asked Ms. Gatto where they got his name, and she informed him that they got the lead in their system from "Connected Leads," which she said could be reached at 866-391-1100.

33.     Mr. Abramson received a second telemarketing call on May 3, 2019 on his cellular telephone number (412) 362-XXXX.

34.     After the call was answered, there was a pause before anyone came on the line, indicating that the call was made with an ATDS.

35.     The Caller ID number associated with this call was 215-631-8452, which was a non-working number.

36.     This is further indication that this telemarketing call was made by an ATDS.

37.     When the call connected with a live agent, the individual identified themselves as Samantha Smith.

38.     The individual stated that she was calling on behalf of Allstate Insurance.

39.     The Plaintiff asked the caller to repeat and clarify that statement.

40.     The caller repeated that her name was Samantha Smith and that she was calling on behalf of Allstate Insurance.

41.     Mr. Abramson was then transferred to the Michael Walling Agency and spoke to a "Tracy Putnam".

42.     Ms. Putnam then attempted to sell the Plaintiff Allstate services.

43.     Ms. Putnam then wrote the Plaintiff an e-mail entitled "Hello from Allstate."

44.     Neither of the two above-described telemarketing calls were necessitated by an emergency.

45.     Plaintiff's privacy was violated by the above-described telemarketing robocalls from, or on behalf of, Defendants.  The calls were an annoying, harassing, and a nuisance.

46.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls.  The calls occupied his cellular telephone lines, rendering them unavailable for legitimate communication.

**Allstate's Liability**

47.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

48.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

49.     In that ruling, the FCC instructed that sellers such as Allstate may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6574, ¶ 1 (2013) ("May 2013 FCC Ruling").

to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd. at 6588, ¶ 37 (internal citations omitted).

50.    The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd. at 6586, ¶ 34.

51.    The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd. at 6592, ¶ 46.

52.    By permitting their agents to hire telemarketing companies such as Connected Leads, Allstate "manifest[ed] assent to another person … that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

53.    Moreover, Allstate maintained interim control over Connected Leads and Prossen Agency's conduct.

54.     For example, Allstate had absolute control over whether, and under what circumstances, it would accept a customer.

55.     Furthermore, Allstate had day-to-day control over Connected Leads and the Prossen Agency's conduct, including the ability to prohibit it from using an ATDS to contact potential customers of Allstate.

56.     Additionally, Allstate restricted the geographic location that Connected Leads and the Prossen Agency could promote Allstate as it directed where its agents could generate leads.

57.     Allstate also gave interim instructions to Connected Leads and the Prossen Agency by providing the volume of calling and leads it would purchase.

58.     Connected Leads transferred customer information directly to Allstate through its agent Prossen Agency.  Thus, the company that Allstate hired has the "ability … to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling.  As such, the companies are an apparent agent of Allstate.

59.     Allstate had also previously been sued for the actions of third party telemarketers it hired, and as such was on notice that third parties, such as Connected Leads, were violating the TCPA on Allstate's behalf.

60.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information."  *Id.* at 6592-593,  ¶ 46.  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent."  *Id.* at 6593, ¶ 46.

### Class Action Allegations

61.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings

this action on behalf of a class of all other persons or entities similarly situated throughout the

United States.

62.     The Class of persons Plaintiff proposes to represent are tentatively defined as:

CLASS 1

> All persons within the United States to whom: (a) Connected Leads and/or a third
> party acting on its behalf made one or more non-emergency telephone calls; (b)
> promoting Allstate products or services; (c) to their cellular telephone number; (d)
> using an automatic telephone dialing system or an artificial or prerecorded voice;
> and (e) at any time in the period that begins four years before the date of the filing
> of this Complaint to trial.

Excluded from the Class are the Defendants, and any entities in which the Defendants have a

controlling interest, the Defendants' agents and employees, any judge to whom this action is

assigned, and any member of such judge's staff and immediate family.

63.     The Class as defined above is identifiable through phone records and phone

number databases.

64.     The potential Class members number at least in the thousands, since automated

telemarketing campaigns make calls to hundreds or thousands of individuals a day.  Individual

joinder of these persons is impracticable.

65.     Plaintiff is a member of the proposed Class.

66.     There are questions of law and fact common to Plaintiff and to the proposed

Class, including but not limited to the following:

a.     Whether Defendants violated the TCPA by using automated telemarketing

to call cellular telephones;

b.      Whether Defendants placed calls using an automatic telephone dialing system;

c.      Whether Allstate is vicariously liable for the conduct of Connected Leads;

d.      Whether Defendants placed calls without obtaining the recipients' prior consent for the call;

e.      Whether the Plaintiff and the Class members are entitled to statutory damages because of Defendants' actions.

67.     Plaintiff's claims are typical of the claims of Class members.  Plaintiff's claims, like the claims of the Class, arise out of the same common course of conduct by the Defendants and are based on the same legal and remedial theories.

68.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

69.     Common questions of law and fact predominate over questions affecting only individual Class members.  The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or its agents.

70.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

71.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

72.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Causes of Action

### Count One:
### Violation of the TCPA's Automated Calling provisions

73.     Plaintiff Abramson incorporates the allegations from all previous paragraphs as if fully set forth herein.

74.     The foregoing acts and omissions of the Defendants constitute violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

75.     As a result of the Defendants' violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).  The Court may award up to $1,500 if the violation was found to be "knowing or willful."  *Id.*

76.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

## Relief Sought

For himself and all Class members, Plaintiff requests the following relief:

A.      Certification of the proposed Class;

B.      Appointment of Plaintiff as representative of the Class;

C.      Appointment of the undersigned counsel as counsel for the Class;

D.      A declaration that Defendants' actions complained of herein violate the TCPA;

E.      An order enjoining Defendants from making automated or pre-recorded calls;

F.      An award to Plaintiff and the Class of damages, as allowed by law;

G.      Leave to amend this Complaint to conform to the evidence presented at trial; and

H.      Orders granting such other and further relief as the Court deems necessary, just,

and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**


PLAINTIFF,

STEWART ABRAMSON
By his attorneys,

**/s/ Brian K. Murphy**
Brian K. Murphy (6225697)
Jonathan P. Misny
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com
misny@mmmb.com

Lauren E. Urban (6293832)
2425 N. Spaulding Ave., Floor 2
Chicago, IL 60647
(419) 344-1146
lauren.elizabeth.urban@gmail.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com