IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEWART ABRAMSON, on behalf of himself and others similarly situated, | : : : |
| Plaintiff, | : Case No. 1:19-cv-3711 : |
| v. | : Hon. Sara L. Ellis : |
| CONNECTED MARKETING, LLC, et al., | : : |
| Defendants. _____/ | : |

**PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS OF THE PROSSEN AGENCY, LLC**

This proposed class action alleges that The Allstate Corporation ("Allstate") violated the Telephone Consumer Protection Act, 27 U.S.C. § 227, *et seq.* ("TCPA"). Specifically, Stewart Abramson ("Plaintiff") alleges that Allstate, an Illinois corporation, authorized its agent, The Prossen Agency ("Prossen"), to market on its behalf and using its trade name. Prossen, in turn, hired a telemarketer called Connected Marketing, LLC ("Connected Marketing") to physically initiate telemarketing calls on the joint behalf of Prossen and Allstate. Prossen now moves to dismiss on two grounds. (Doc. 34.) First, it claims that Mr. Abramson, a self-described telemarketing activist who, for many years now, has fought back against illegal telemarketing by investigating the source of such calls and taking perpetrators to court has no standing to enforce the TCPA simply because he enforces the TCPA. Prossen next contends that it has no connections to Illinois and, therefore, is not subject to the jurisdiction of the Court. Prossen makes such a claim despite the fact that the Amended Complaint alleges the calls here were made to sell Illinois-based Allstate's insurance policies in furtherance of an ongoing agency relationship Prossen entered into with Allstate where it held itself out to the public as Allstate.

Prossen simply must have expected it would be haled into court where Allstate is located under these circumstances. As detailed below, both of Prossen's arguments lack merit, and the motion should be denied.

## ARGUMENT

I. **Mr. Abramson has standing to enforce the TCPA.**

Faced with a class action lawsuit seeking to hold it to account for what is suspected to be a massive campaign of illegal telemarketing in violation of the TCPA, Prossen attacks Mr. Abramson, claiming he is "notorious" and a "serial TCPA litigant." (Doc. 34, p. 2.) The factual basis for such a claim is that Mr. Abramson has allegedly filed "approximately 20 lawsuits under the TCPA in various jurisdictions." (*Id.*) Prossen further claims that since Mr. Abramson subjectively "welcomed" its telemarketing call, he was not harmed by the call, has suffered no injury, and therefore has no Article III standing to pursue his claim pursuant to the United States Supreme Court's decision in *Spokeo v. Robins,* 136 S. Ct. 1540 (2016).

A. **Mr. Abramson's willingness to enforce the TCPA does not strip his standing to enforce the TCPA.**

Prossen contends that since Mr. Abramson is a "notorious" "serial TCPA litigant," he should be stripped of the TCPA's protections. Mr. Abramson's activities as a consumer advocate, empowered by the congressionally-conferred private right of action to enforce the TCPA, supports one conclusion: that Mr. Abramson, a private citizen motivated to fight back against illegal telemarketers, is exactly the sort of plaintiff Congress intended the TCPA to protect and fits squarely within the TCPA. Rather, by actively holding defendants to account for their illegal acts via the private right of action afforded to consumers by Congress, Mr. Abramson is doing *exactly* what Congress intended—he is enforcing the law. *See Shelton v. Direct Energy,* No. 1:19CV0081, 2019 U.S. Dist. LEXIS 150559 (N.D. Ohio Aug. 27, 2019)

(rejecting identical argument that a "professional plaintiff" did not have standing to enforce the TCPA); *Shelton v. Nat'l Gas & Elec., LLC,* No. 17-4063, 2019 U.S. Dist. LEXIS 59235 (E.D. Pa. Apr. 5, 2019) (rejecting identical argument that a "professional plaintiff" did not have standing to enforce the TCPA); *Abramson v. Oasis Power LLC*, No. 2:18-cv-00479, 2018 U.S. Dist. LEXIS 129090, at *16 (W.D. Pa. July 31, 2018) ("As other courts addressing this issue have agreed, a citizen's decision to aggressively enforce his rights under the TCPA should not negate otherwise valid privacy interests").

In support of its contention that this litigation should be dismissed now, even before Mr. Abramson could pursue discovery, Prossen cites to *Stoops v. Wells Fargo Bank, N.A.,* 197 F. Supp. 3d 782 (W.D. Pa. 2016). With good reason, federal courts have been skeptical of defendants attempting to paint TCPA cases with a broad brush invoking *Stoops*. *See, e.g., Jones v. Revenue Assistance Corp.*, No. 14-10218-GAO, 2016 U.S. Dist. LEXIS 136993, at *16-17 (D. Mass. Aug. 31, 2016) ("Although Defendant argues that Plaintiff's only source of income since 2012 has been lawsuits, unlike the plaintiff in *Stoops*, Jones has not admitted that he 'files TCPA actions as a business.'"); *Evans v. Nat'l Auto Div., L.L.C.*, No. 15-8714, 2016 U.S. Dist. LEXIS 123660, at *8 (D.N.J. Sept. 12, 2016) ("As a consumer complaining of receiving intrusive telemarketing calls, Plaintiff falls directly within the zone of interests protected by the TCPA. … *Stoops* is distinguishable from this case on the grounds that the plaintiff in that case acknowledged that she only purchased cell phones in order to file TCPA lawsuits."). In fact, as one federal court stated when distinguishing *Stoops* in *Mey v. Venture Data, LLC,* 245 F. Supp. 3d 771 (N.D.W. Va. 2017):

> It is true that the plaintiff has brought a number of TCPA cases. It is further true that she has telephone answering and recording equipment which is more sophisticated than that of the average consumer. It is not true that she seeks to receive such calls. She does nothing to attract the calls; in fact, her telephone

3

> number is listed on the National Do Not Call Registry. Rather, she uses her equipment to record and document TCPA calls when they do occur.
>
> This does not deprive the plaintiff of standing any more than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken into.
>
> In support of its argument, POS cites *Stoops v. Wells Fargo Bank, N.A.*, 197 F.Supp.3d 782 (W.D. Pa. 2016). In *Stoops*, the district court found that the plaintiff did not have standing to sue when she suffered no injury-in-fact. The plaintiff in *Stoops*, who resided in Pennsylvania, purchased and maintained over thirty cell phones with Florida telephone numbers and admitted to doing this because she knew the locations she selected in Florida were economically depressed and included people who would be defaulting on their loans or their credit cards. The plaintiff waited for the phones to ring; she sometimes answered the calls and told the callers to stop, but she testified her hope was that the calls would continue so she could treble her damages.
>
> ….
>
> On the other hand, in *Fitzhenry v. ADT Corp.*, 2014 U.S. Dist. LEXIS 166243, 2014 WL 6663379, at *5 (S.D. Fla. Nov. 3, 2014), the Court held that "[a]though Plaintiff may have created a home environment that allows him to document telemarketing calls better than most consumers, the Court is not convinced that Plaintiff is outside of the TCPA's zone of interest."
>
> ….
>
> This Court declines to follow *Stoops*. This plaintiff did not try to receive calls from other states. She secured equipment to document calls that came to her home. While POS is understandably frustrated by Ms. Mey's efficacy, she is doing exactly what Congress intended —enforcing the law.

*Id.* at 783-784. Just like Ms. Mey, Mr. Abramson is doing exactly what Congress intended—enforcing the law.

Closely analogous to this lawsuit is *Abramson v. CWS Apt. Homes, LLC*, No. 16-426, 2016 U.S. Dist. LEXIS 146627 (W.D. Pa. Oct. 24, 2016), a case also involving Mr. Abramson, where Mr. Abramson filed a putative class action under the TCPA for a single automated telemarketing call, and the defendant asserted that Mr. Abramson, following the *Stoops* decision in the same district that *Stoops* was decided, did not suffer an injury in fact as he had filed more

than 300 lawsuits to vindicate his rights under the TCPA. In denying the motion to dismiss, the court found:

> Abramson suffered a concrete harm analogous to the common law tort of invasion of privacy. Congress has determined unrestricted telemarketing "can be an intrusive invasion of privacy." In line with Congress' finding, courts hold "a plaintiff demonstrates a violation of privacy interests, and therefore an injury-in-fact, after receiving automated calls" in violation of the Act. Abramson alleges CWS sent him the offending text message despite his lack of consent to receive telemarketing and his lack of business dealings with CWS. Abramson also claims he never provided CWS with his cell phone number. These facts adequately demonstrate Abramson suffered a concrete injury akin to a violation of his privacy interests.
>
> We reject CWS's argument Abramson's pursuit of his rights under the Act in other lawsuits demonstrates the lack of an injury. As Abramson adequately pleads a concrete and particularized injury, he satisfies Article Ill's standing requirements. Abramson's decision to enforce his rights under the Act does not negate the existence of a cognizable injury.

*Id.* at *6-7. The facts are the same for Mr. Abramson; he received an automated solicitation call despite never doing business with the Defendant and never providing it with his phone number.

### B. <u>Illegal telemarketing calls cause concrete injuries.</u>

Prossen claims that Mr. Abramson does not have standing to file suit because he was not harmed by the illegal telemarketing call at issue. "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) he has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). An injury in fact is "an invasion of a legally protected interest" that is "concrete and particularized." *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 762-63 (3d Cir. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "[T]he court must only consider the allegations of the

5

complaint and documents referenced therein and attached thereto, in the light most favorable to Plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  In the case of *Spokeo*, the Supreme Court confirmed that a plaintiff must plead a concrete and particularized injury but clarified that an "intangible" injury is sufficient to confer Article III standing.  Since *Spokeo,* district courts have repeatedly held that plaintiffs who allege under the TCPA that automated or prerecorded telephone calls invade their privacy or are a nuisance, or who complain that the calls have occupied their phone lines preventing legitimate communications, have established Article III standing.[1]

In fact, the Third Circuit Court of Appeals—and *Stoops* was decided in the Western District of Pennsylvania—recently held:

> [W]e conclude that the injuries alleged by Susinno are concrete for two reasons. First, Congress squarely identified this injury.  The TCPA addresses itself directly to single prerecorded calls from cell phones, and states that its prohibition acts "in the interest of [ ] privacy rights."  47 U.S.C. § 227(b)(2)(C).  The congressional findings in support of the TCPA likewise refer to complaints that "automated or prerecorded telephone calls are a nuisance [and] … an invasion of privacy." Pub. L. 102-243, § 2.  We therefore agree with Susinno that in asserting "nuisance and invasion of privacy" resulting from a single prerecorded telephone call, her complaint asserts "the very harm that Congress sought to prevent," arising from prototypical conduct proscribed by the TCPA.  App. 11 (First Amended Complaint); *see also Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (finding two unwanted text messages constituted a concrete

---

[1] *See Cabiness v. Educ. Fin. Sols.*, No. 16-cv-01109-JST, 2016 WL 5791411 (N.D. Cal. Sept. 1, 2016) (a TCPA violation "necessarily harms the recipient of the unwanted calls such that the statutory violation is sufficient on its own to constitute an injury in fact"); *Cour v. Life360, Inc*., No. 16-CV-00805-TEH, 2016 WL 4039279, at *2 (N.D. Cal. July 28, 2016) (rejecting Life360's argument that invasion of privacy is insufficient to confer Article III standing); *Juarez v. Citibank, N.A*., No. 16-CV-01984-WHO, 2016 WL 4547914, at *3 (N.D. Cal. Sept. 1, 2016) ("Juarez's allegation that he received repeated unwanted calls that caused him aggravation, nuisance, and an invasion of privacy, is sufficient to allege a 'concrete' and 'particularized' injury that establishes standing under *Spokeo*."); *Krakauer v. Dish Network L.L.C.*, No. 1:14-CV-333, 2016 WL 4272367, at *2 (M.D.N.C. Aug. 5, 2016) ("While class members did not necessarily pick up or hear ringing every call at issue in this case, each call created, at a minimum, a risk of an invasion of a class member's privacy" for purposes of Article III standing); *Caudill v. Wells Fargo Home Mtg., Inc*., No. 5:16–066, 2016 WL 3820195, at *2 (E.D. Ky. July 11, 2016) (noting that calls caused harms "such as the invasion of privacy [that] have traditionally been regarded as providing a basis for a lawsuit in the United States").

> injury under the TCPA, as they "present the precise harm and infringe the same privacy interests Congress sought to protect").
>
> ….
>
> Traditionally, a plaintiff's "privacy is invaded" for the purpose of an intrusion upon seclusion claim by telephone calls "only when [such] calls are repeated with such persistence and frequency as to amount to … hounding." Intrusion upon Seclusion, Restatement (Second) of Torts § 652B, cmt d (1977). The Second Restatement suggests that because "two or three" calls would not be "highly offensive to the ordinary reasonable [person]," they traditionally would provide no cause of action. *Id.* Yet when Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at 1043, it sought to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally cognizable injuries." *Spokeo*, 136 S. Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress.
>
> For these reasons, we hold that Susinno has alleged a concrete, albeit intangible, harm under the Supreme Court's decision in *Spokeo*.

*Susinno v. Work Out World Inc.,* 862 F.3d 346, 351-52 (3d Cir. 2017). The Ninth Circuit's recent opinion concerning a similar TCPA claim is also instructive. In *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017), the defendants argued that the plaintiff had not established the concrete injury in fact necessary to pursue his TCPA claim in light of *Spokeo*. *Id.* at 1042. The Ninth Circuit disagreed, explaining: "[B]oth history and the judgment of Congress play important roles in supporting our conclusion that a violation of the TCPA is a concrete, *de facto* injury." *Id.* at 1043. Specifically, the Ninth Circuit reasoned: "The TCPA establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent. Congress identified unsolicited contact as a concrete harm and gave consumers a means to redress the harm." *Id.* This Court should reach the same result here.

As explained below, Mr. Abramson suffered at least three concrete injuries that have

7

been recognized under the common law, or by Congress: (1) invasion of privacy and a nuisance; (2) occupation of Plaintiff's cellular telephone; and (3) economic harm from the use of phone. Each injury alone is sufficient in and of itself to establish Article III standing.

### 1.   *Prossen's calls invaded Mr. Abramson's privacy and were a nuisance.*

Nuisance and invasion of privacy are the precise harms that Congress sought to prevent in enacting the TCPA.  Here, Mr. Abramson has alleged he and putative class members suffered particularized and concrete injuries because the calls at issue were a nuisance and violated class members' privacy and property rights—the exact harms that Congress sought to prevent in enacting the TCPA.  *See* 47 U.S.C. § 227 (Congressional Findings); *see also Owens Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814, 819-20 (8th Cir. 2012) ("[T]he ordinary meaning of the term 'right of privacy' easily includes violations of the type of privacy interest protected by the TCPA.").

When Congress established the TCPA in 1991, it did so to protect consumers from the "nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate." *Rules & Regulations Implementing the Tel. Consumer Prot. Act*, 30 FCC Rcd. 7961, 7979 (2015).  Robocalls are, as the Act's sponsor put it, "the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall."  137 Cong. Rec. 30,821-30, 822 (1991) (Statement of Sen. Hollings).  And, "like the buckets enchanted by the Sorcerer's Apprentice, [they] continue until stopped by their true master." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639 (7th Cir. 2012); *see also LaVigne v. First Cmty. Bancshares, Inc.*, No. 1:15-CV-00934-WJ-LF, 2016 WL 6305992, at *7 (D.N.M. Oct. 19, 2016) ("The TCPA codifies the application of a long-recognized common law tort of

invasion of privacy, and the Court would add the tort of nuisance as well, for a particularly intrusive type of unwanted conduct: unauthorized 'robocalls.'").  Mr. Abramson filed this lawsuit to combat the proliferation of intrusive, nuisance telemarketing practices violative of class members' privacy rights.  Because these harms are the very harm that Congress sought to prevent in enacting the TCPA, they are sufficiently "concrete" to satisfy Article III injury in fact standing as articulated in *Spokeo*.

### 2. *Defendants harmed Mr. Abramson by occupying his phone line.*

One purpose of the TCPA is to "keep[] telephone lines from being tied up." *Am. States Ins. Co. v. Capital Assocs.*, 392 F.3d 939, 942 (7th Cir. 2004).  Just as the privacy interests identified in the TCPA are grounded in the common law tort of invasion of privacy, the harm caused by unwanted robocalls to cell phones has a close relationship to the harm recognized by the ancient common law tort "trespass to chattels." *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 WL 3645195, at *6 (N.D.W. Va. June 30, 2016).  Indeed, courts have repeatedly held that the electronic intrusion upon another person's computerized electronic equipment, even if temporary, constitutes trespass to chattels. *See, e.g., Czech v. Wall St. on Demand,* 674 F. Supp. 2d 1102, 1122 (D. Minn. 2009) (declining to dismiss cell phone owner's trespass to chattels claim against sender of unwanted text messages).

In *Mey v. Got Warranty*, the court found trespass to chattels to be "a close analog for a TCPA violation" and held that the defendant's occupation of the plaintiff's telephone line was a concrete injury sufficient to establish Article III standing for the plaintiff's TCPA claim.  2016 WL 3645195, at *6.  The *Mey v. Got Warranty* court thus denied the defendant's motion to dismiss for lack of standing, explaining that "the TCPA can be viewed as merely applying this common law tort to a 21st-century form of personal property and a 21st-century method of intrusion." *Id.*  This Court should reach the same result here.  As in *Mey v. Got Warranty,*

9

Plaintiff received illegal prerecorded telemarketing on his cellphone, which occupied the lines and prevented Plaintiff from engaging in legitimate communications. (*See* Doc. 44, ¶ 51.)

*Spokeo* also recognized that an injury would satisfy Article III's "concreteness" requirement if the injury "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549. Invasion of privacy is just such a harm long recognized by the common law. Almost all states recognize invasion of privacy as a common law tort. *See* Eli A. Meltz, *No Harm, No Foul? Attempted Invasion of Privacy and the Tort of Intrusion Upon Seclusion*, 83 Fordham L. Rev. 3431, 3440 (May 2015) (state-by-state survey; "Currently, the vast majority of states recognize the intrusion strand of invasion of privacy either under common law or by statute."). In enacting the TCPA, Congress repeatedly recognized that telemarketing calls are violative of consumers' privacy rights. The right to privacy is also protected under the Constitution. *See, e.g.*, *Lawrence v. Texas*, 539 U.S. 558 (2003); *Eisenstadt v. Baird*, 405 U.S. 438 (1972). Accordingly, as the protections afforded consumers under the TCPA have a close relationship to the right of privacy and nuisance long recognized by the common law, consumers who allege a violation of the TCPA adequately allege a concrete "injury in fact" sufficient to satisfy Article III's standing requirements.

### 3. *Mr. Abramson suffered concrete harm in the form of economic damages from the use of his telephone line.*

Finally, as a result of Prossen's unlawful telemarketing calls, Mr. Abramson sustained tangible economic harm. The calls at issue were received on a phone used by and paid for by Mr. Abramson. (*See* Doc. 44, ¶¶ 27, 39, 51; *see also* Declaration of Stewart Abramson, attached hereto as Exhibit 1.) The FCC has long recognized that the recipient of telemarketing calls is "charged" for such calls, even if the phone subscribes to a plan that charges a flat monthly rate.

*See In re Rules and Regulations Implementing the TCPA of 1991,* 18 FCC Rcd. 14014, 14115 (2003); *In re Rules and Regulations Implementing the TCPA of 1991*, 23 FCC Rcd. 559, 562 (2007); *In re Rules and Regulations Implementing the TCPA of 1991*, 27 FCC Rcd. 1830, 1839-40 (2012); *Fini v. DISH Network L.L.C.*, 955 F. Supp. 2d 1288, 1297 (M.D. Fla. 2013); *Lee v. Credit Mgmt.*, 846 F. Supp. 2d 716, 729 (S.D. Tex. 2011).  As Mr. Abramson paid for his monthly cell phone on which he received the telemarketing calls at issue, Mr. Abramson has alleged a tangible injury in fact sufficient to satisfy Article III's standing requirement.  *See Warnick v. DISH Network, LLC,* 2014 U.S. Dist. LEXIS 138381, at *43-46 (D. Colo. Sept. 30, 2014) (rejecting argument that because plaintiff did not have a pay per call plan he did not suffer any injury as a result of the calls at issue); *Soppet*, 679 F.3d at 638 (consumers ultimately bear the costs of violative calls to cell phones regardless of "whether they pay in advance or after the minutes are used").  This "tangible" harm is sufficient to confer standing under *Spokeo*.

The invasion of privacy and the allegation that the illegal calls cost Mr. Abramson and the class money—financial harm—are not speculative future injuries or injuries based on the violation of rights provided in a statute.  *See, e.g., Jamison v. Esurance Ins. Servs., Inc.,* No. 3:15-CV-2484-B, 2016 WL 320646, at *3 (N.D. Tex. Jan. 27, 2016) ("Here, Jamison alleged that when Esurance violated the TCPA, it caused her to incur cellular telephone charges or to reduce her previously-paid-for cellular telephone time, and that it invaded her privacy.  At this stage, this pleading is sufficient to establish an injury in fact.").

II.     **Prossen is subject to personal jurisdiction in Illinois.**

Prossen next contends it is not subject to jurisdiction in Illinois.  In this regard, the Amended Complaint alleges that Allstate is an Illinois corporation and that Prossen does business in Illinois because it contracted with Allstate in Illinois to become a captive agent of

11

Allstate, authorized to sell Allstate's insurance policies and authorized to hold itself out to the public as being Allstate. (Doc. 44, ¶¶ 2, 57-63.) The Plaintiff further alleges that Prossen has a continuous and ongoing relationship with Allstate wherein Allstate exercises various forms of interim control over Prossen. (*Id.*, ¶¶ 58-61.)

In moving to dismiss, Prossen claims these facts are not true.[2] Specifically, Prossen claims through counsel that "it is not an agent of Allstate."[3] Further, Prossen's principal attests under oath that Prossen does no business whatsoever in Illinois and refers the Court to its website (www.prossenagency.com) as purported proof. (*See* Doc. 34, Affidavit of Brian Prossen at Ex. B, excerpt from https://www.prossenagency.com.)

Prossen's own website, however, proves the opposite is true and that Prossen is an Allstate agent as alleged in the Amended Complaint. Specifically, the photographs of Prossen's Pennsylvania offices contained on Prossen's own website evidence that Prossen holds itself out to the public as affiliated with Allstate.

---

[2] Of course, at this stage of the litigation, the facts as pled in the Amended Complaint are accepted as true, a concept that Prossen ignores.

[3] *See* Transcript of Proceedings, attached hereto as Exhibit 2:

> THE COURT: All right. So is Prossen taking the position that it's an agent of Allstate?
>
> MR. SANDERS: No, Your Honor.
>
> THE COURT: Okay. What's Prossen's relationship with regard to Allstate?
>
> MR. SANDERS: Prossen sells insurance policies, some of which are Allstate policies, some of which are not. We're not a captive agent, as is indicated by defense counsel – or by plaintiff's counsel.

*Id.* at 4:3-11.





Finally, the "Contact Us" page on the Prossen website notes that Mr. Prossen can be contacted at **bprossen@allstate.com**.  (*See* https://www.prossenagency.com/contact.html (last visited Sept. 23, 2019) (emphasis added).)

On a Rule 12(b)(2) motion to dismiss, the plaintiff "need only make out a prima facie case of personal jurisdiction."  *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).  In analyzing personal jurisdiction in the context of the TCPA, courts look to whether jurisdiction is proper under the Illinois long-arm statute.  *See, e.g., Payton v. Kale Realty, LLC*, No. 13 C 8002, 2014 U.S. Dist. LEXIS 118590, at *6-7 (N.D. Ill. Aug. 26, 2014); *see also* Fed. R. Civ. P. 4(k)(1)(A).  Illinois allows for personal jurisdiction to the extent authorized by the Fourteenth Amendment's due process clause, which merges the federal constitutional and state statutory inquiries.  *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487,

13

491-92 (7th Cir. 2014); *see also* 735 Ill. Comp. Stat. 5/2-209(c).  Specific jurisdiction grows out of "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (*quoting Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).  This type of jurisdiction requires that "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *N. Grain Mktg.*, 743 F.3d at 492.  "The exercise of specific jurisdiction must also comport with traditional notions of fair play and substantial justice." *Id.* (citing *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010)).

"While an out-of-state party's contract with an in-state party is not enough alone to establish the requisite minimum contacts, 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' may indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 716 (7th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

These principles applied to the above facts easily establish personal jurisdiction in Illinois over Prossen.  Plaintiff alleged that Prossen entered into a contract to be a captive agent of Illinois-based Allstate, and thereby entered into an ongoing relationship with Allstate in Illinois for the purpose of selling Allstate's Illinois products—Illinois insurance policies.  This case arises directly out of that relationship and Prossen's attempts to sell those insurance policies on Allstate's behalf through telemarketing.  Any sales Prossen would ultimately make through telemarketing would go through Allstate in Illinois.  Prossen had continuing obligations to Allstate in Illinois and was subject to Allstate's extensive interim control.  Prossen certainly

should have reasonably expected it would be haled into court where Allstate is located, in Illinois, considering it holds itself out to the general public as Allstate, as Allstate allowed it to do.

Even if the Court were to look beyond the four corners of the Amended Complaint and to the website referred to by Prossen in support of its Motion to Dismiss, Prossen's *own website* proves that Prossen's representations that it is not an Allstate agent are false and that Prossen, in fact, holds itself out to the public as being affiliated with Allstate.  The exercise of jurisdiction over Prossen under these circumstances easily comports with traditional notions of fair play and substantial justice.

## CONCLUSION

For the foregoing reasons, Prossen's Motion to Dismiss Plaintiff's Complaint must be DENIED.

                    Respectfully submitted,

                    **/s/ Brian K. Murphy**
                    Brian K. Murphy (6225697)
                    Jonathan P. Misny
                    Murray Murphy Moul + Basil LLP
                    1114 Dublin Road
                    Columbus, OH  43215
                    (614) 488-0400
                    (614) 488-0401 facsimile
                    murphy@mmmb.com
                    misny@mmmb.com

                    Lauren E. Urban (6293832)
                    2425 N. Spaulding Ave., Floor 2
                    Chicago, IL 60647
                    (419) 344-1146
                    lauren.elizabeth.urban@gmail.com

>Anthony I. Paronich
>Paronich Law, P.C.
>350 Lincoln Street, Suite 2400
>Hingham, MA 02043
>(508) 221-1510
>anthony@paronichlaw.com
>
>Matthew P. McCue
>Law Office of Matthew P. McCue
>1 South Ave.
>Natick, MA 01760
>(508) 655-1415
>mmccue@massattorneys.net
>
>*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2019 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. In addition, the foregoing was served via regular U.S. Mail, postage prepaid, upon the following:

| | |
|---|---|
| The Walling Agency, LLC<br>5333 Westgate Drive<br>Girard, PA 16417 | Greg Sheppard<br>4753 N. Dover Street<br>Chicago, IL 60640 |
| Connected Marketing, LLC<br>c/o Greg Sheppard, Registered Agent<br>4753 N. Dover Street<br>Chicago, IL 60640 | |

>**/s/ Brian K. Murphy**
>Brian K. Murphy